*In Propria Persona*
Corey Drew
164 Rainbow Dr. #6423
Livingston TX, 77399
480.630.3522
Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corey Drew, | Cause No: 3:24-cv-08073-KLM-MTM |
| *Plaintiff,* | |
| vs. | |
| County of Yavapai; Yavapai County Sheriff Office; Dennis McGrane; Tom Boelts; John Johnson; Samuel Contreras; Patrick Boehm; Larry Hooten; et. al.; | **PLAINTIFF RESPONSE TO DEFENDANTS COUNTY OF YAVAPAI, YAVAPAI COUNTY SHERIFF OFFICE, BOELTS, AND JOHNSON'S MOTION TO DISMISS COMPLAINT** |
| *Defendants.* | Hon. Judge Michael T. Morrissey |

1

| | | |
|---|---|---|
| I. | Defendants' Motion Under Rule 12(b)(6) Lacks Merit | 3 |
| II. | Qualified Immunity Should Be Denied to Individual Defendants | 4 |
| | A. Violation of Clearly Established First Amendment Rights | 4 |
| | B. Violation of Clearly Established Fourth Amendment Rights | 5 |
| | C. Defendants' Conduct Was Objectively Unreasonable | 6 |
| III. | Plaintiff Properly Pleads a Monell Claim Against Yavapai County | 7 |
| | A. Failure to Train | 7 |
| | B. Policy or Custom Leading to Constitutional Violations | 8 |
| | C. Ratification by a Final Policymaker | 9 |
| IV. | The Yavapai County Sheriff's Office is a Proper Defendant | 10 |
| V. | Plaintiff's State Law Claims Should Not Be Barred Due to Statute of Limitations | 11 |
| VI. | County Liability Under § 1983 Is Properly Pled | 13 |
| | A. Monell Liability for Unconstitutional Policies and Customs | 13 |
| | B. Liability for Failure to Train and Supervise | 14 |
| | C. Ratification by a Final Policymaker | 15 |
| VII. | Plaintiff's Claims for Punitive Damages Against Individual Defendants | 16 |
| | A. Legal Standard for Punitive Damages in § 1983 Actions | 16 |
| | B. Malice and Reckless Indifference Demonstrated by Defendants | 17 |
| | C. No Immunity for Malicious or Recklessly Indifferent Conduct | 18 |
| Conclusion | | 19 |
| Certificate Of Service | | 20 |

Plaintiff, Corey Drew, respectfully submits this response to Defendants' Motion to Dismiss. Contrary to Defendants' assertions, Plaintiff has adequately pled claims under 42 U.S.C. § 1983, detailing multiple violations of constitutional rights, as well as state law claims. As discussed herein, Defendants' arguments are unsubstantiated, and their motion should be denied in its entirety.

**I.   Defendants' Motion Under Rule 12(b)(6) Lacks Merit**

Defendants claim that Plaintiff's Complaint fails to state a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, Plaintiff's Complaint not only contains sufficient factual allegations but provides explicit details regarding the unlawful arrest, retaliatory prosecution, and abuse of authority by the individual Defendants. These allegations are detailed in multiple counts, specifically in Counts One (First Amendment Retaliation), Count Nine (Unreasonable Seizure of Person), and Count Twelve (Intentional Infliction of Emotional Distress) (Complaint, ¶¶ 206-308).

Furthermore, the U.S. Supreme Court held in *Johnson v. City of Shelby,* 574 U.S. 10 (2014), that a plaintiff need not specify a particular legal theory in asserting claims of constitutional violations, so long as they provide sufficient notice of their claims. Plaintiff's Complaint clearly alleges that Defendants engaged in an unlawful course of conduct, which included the unlawful stop, detention, arrest, and retaliatory actions that deprived Plaintiff of his constitutional rights and causing intentional harm.

3

## II. Qualified Immunity Should Be Denied to Individual Defendants

Defendants assert entitlement to qualified immunity, which shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, Plaintiff contends that Deputies Contreras, Boehm, Johnson, and Boelt's actions infringed upon clearly established First, Fourth, and Fourteenth Amendment rights, and no reasonable officer in their position could have believed such conduct was lawful.

### A. Violation of Clearly Established First Amendment Rights

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment right to free speech, specifically his intention to escalate a complaint against Deputies Contreras and Boehm and publishing the false arrest. The Ninth Circuit has consistently held that government officials may not retaliate against individuals for exercising their First Amendment rights. In *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990), the court stated, "The First Amendment forbids government officials from retaliating against individuals for speaking out." Similarly, in *Ford v. City of Yakima*, 706 F.3d 1188, 1194 (9th Cir. 2013), the court held that a public official's actions taken in retaliation for an individual's exercise of free speech violate the First Amendment.

The U.S. Supreme Court in *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019), reaffirmed that retaliatory arrest in response to constitutionally protected speech is unlawful, particularly when there is an absence of probable cause. The Court noted, "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right.'"

Here, Plaintiff's Complaint alleges that Defendants' actions—including retaliation against Plaintiff for filing a complaint and publishing the video, as well as escalating a

4

confrontation that resulted in Plaintiff's arrest—were motivated by retaliatory animus in response to Plaintiff's exercise of his Constitutional Rights. The law is clear that retaliation for exercising free speech is a violation of the First Amendment. No reasonable officer could believe that suppressing an individual's right to speak out against official misconduct and retaliating against them through arrest was lawful. Thus, qualified immunity should not apply.

**B. Violation of Clearly Established Fourth Amendment Rights**

Plaintiff also alleges that Defendants violated his Fourth Amendment rights by unlawfully seizing and arresting him without probable cause. The Fourth Amendment guarantees the right of individuals to be secure against unreasonable searches and seizures, and this right is violated when an individual is arrested without probable cause. In *Beck v. Ohio*, 379 U.S. 89, 91 (1964), the U.S. Supreme Court held that probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense."

The Ninth Circuit has consistently affirmed that an arrest without probable cause is a violation of the Fourth Amendment. In *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991), the court held that an officer is not entitled to qualified immunity if a reasonable officer would have understood that the conduct violated an individual's Fourth Amendment rights. Furthermore, in *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011), the court concluded that an unlawful arrest, lacking probable cause, violates clearly established Fourth Amendment rights and denies officers the protections of qualified immunity.

In Plaintiff's case, Defendants, including Deputies Contreras and Boehm, detained and arrested Plaintiff without any objective basis to believe he had committed a crime.

Plaintiff was compliant, did not engage in any criminal behavior, and was targeted solely because of police incompetence in training and his exercising his rights. The circumstances, as described in the Complaint, show that Defendants did not have probable cause, and their actions were a clear violation of Plaintiff's Fourth Amendment rights.

**C. Defendants' Conduct Was Objectively Unreasonable**

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In this case, Defendants' actions were not those of reasonable officers acting in good faith. Plaintiff has alleged that Defendants acted with malice and retaliatory intent, escalating an otherwise innocuous situation and unlawfully seizing Plaintiff. Johnson and Boelts then retaliated against Plaintiff for his filing a complaint and publishing the false arrest. Seven charges were filed in retaliation. This conduct is objectively unreasonable, as no competent officer would believe that arresting an individual for expressing their intention to file a complaint or publishing a recording of a police interaction could be lawful.

Moreover, the Ninth Circuit has emphasized that the right to be free from retaliation for exercising First Amendment rights, as well as the right to be free from arrest without probable cause, are rights that any reasonable officer should have understood. In *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990), the court held that officers may not exercise their authority for personal motives, particularly in response to an individual's exercise of free speech.

The qualified immunity doctrine does not shield Defendants from liability in this case, as Plaintiff has sufficiently alleged that they violated clearly established First, Fourth, and Fourteenth Amendment rights. These rights were well established at the time of Defendants' conduct, and no reasonable officer in any Defendants' position would

6

have believed their actions were lawful. For these reasons, Plaintiff respectfully requests that this Court deny Defendants' claim to qualified immunity and allow Plaintiff's claims to proceed.

**III. Plaintiff Properly Pleads a Monell Claim Against Yavapai County**

Defendants argue that Plaintiff's Monell claim against Yavapai County is inadequately pled. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities can be held liable under § 1983 when a constitutional violation results from an official policy, custom, or a failure to properly train employees that amounts to deliberate indifference. Plaintiff has alleged sufficient facts showing that Yavapai County maintained policies and customs that directly caused the violation of his constitutional rights.

**A. Failure to Train**

Plaintiff alleges that Yavapai County failed to train its deputies on the proper conduct in dealing with individuals exercising their First and Fourth Amendment rights. In *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the Supreme Court held that a municipality's failure to adequately train its employees can constitute a basis for § 1983 liability where the failure to train amounts to "deliberate indifference" to the rights of individuals. The Court explained that liability is established when the failure to train reflects a deliberate or conscious choice by the municipality. Here, Plaintiff alleges that the Yavapai County Sheriff's Office failed to properly train its deputies on de-escalation techniques and respecting individuals' constitutional rights (Complaint, ¶¶ 216-231)

Furthermore, in *Connick v. Thompson*, 563 U.S. 51, 61 (2011), the Supreme Court noted that "[a] municipality's culpability for a deprivation of rights is at its most

tenuous where a claim turns on a failure to train." However, Plaintiff has alleged specific instances that demonstrate a pattern of improper training, including the inability of deputies to recognize and respect Plaintiff's rights under the First, Fourth, and Fourteenth Amendments. Plaintiff has shown that this failure was systemic and not a mere oversight, suggesting deliberate indifference on the part of Yavapai County.

**B. Policy or Custom Leading to Constitutional Violations**

Municipal liability may also arise under § 1983 when the constitutional violation is a result of an official policy or longstanding practice or custom. In *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), the Ninth Circuit held that a "policy or custom may be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Plaintiff alleges that Yavapai County has a custom of disregarding citizens' rights, failing to properly address complaints, and retaliating against individuals who assert their rights (Complaint, ¶¶ 121-123, 227-228). These allegations support an inference of an unofficial policy or custom that resulted in the violation of Plaintiff's rights.

In *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006), the court found that a municipal policy or custom can be established if there is evidence of a practice so "persistent and widespread" that it constitutes a "permanent and well settled" municipal policy. Plaintiff has alleged repeated actions by deputies, including unreasonable seizures and retaliatory conduct, indicating that such practices were widespread within the Sheriff's Office and were either condoned or ignored by policymakers.

8

**C. Ratification by a Final Policymaker**

Another way to establish Monell liability is through the ratification of a subordinate's unconstitutional decision by an official with final policymaking authority. In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), the Supreme Court held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Here, Plaintiff alleges that the actions taken by Deputies Contreras and Boehm were not only conducted under the authority of the Sheriff's Office but were also ratified by senior officials who were aware of the misconduct and failed to take corrective action (Complaint, ¶¶ 137, 230-231). This ratification of unlawful behavior by those with policymaking authority subjects Yavapai County to liability under Monell.

In *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004), the Ninth Circuit reiterated that a municipality can be held liable when an official with final policymaking authority ratifies a subordinate's unconstitutional conduct and the basis for it. Plaintiff has alleged that senior officials were aware of the actions taken by Deputies Contreras and Boehm, yet failed to investigate or discipline the officers involved, effectively ratifying their conduct.

Plaintiff has sufficiently pled a Monell claim against Yavapai County by alleging that the County's policies, customs, failure to train, and ratification of unlawful conduct directly caused the violation of Plaintiff's constitutional rights. Under established legal standards, these allegations are sufficient to survive a motion to dismiss. Therefore, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss with respect to Plaintiff's Monell claim.

**IV. The Yavapai County Sheriff's Office is a Proper Defendant**

Defendants argue that the Yavapai County Sheriff's Office is a non-jural entity that cannot be sued. However, Plaintiff asserts that the Sheriff's Office may be held liable as it operates as a department of Yavapai County, and the County can be named as a party in a lawsuit. Arizona law allows suits against counties and certain departments when a valid claim exists against them. Additionally, Plaintiff has included Yavapai County and individual officials as defendants, ensuring that the proper entities are before the Court.

In *Braillard v. Maricopa County*, 224 Ariz. 481, 486 (App. 2010), the Arizona Court of Appeals acknowledged that, generally, a sheriff's office is not considered a separate legal entity subject to suit, as it is merely a department of the county. However, the court emphasized that where a valid Monell claim or an official policy or practice is involved, the county itself can be sued under 42 U.S.C. § 1983 if the sheriff, as the final policymaker, acted under color of law. Plaintiff here has asserted a Monell claim against Yavapai County by alleging that the Sheriff's Office maintained customs or policies that led to the constitutional violations committed by its deputies (Complaint, ¶¶ 215-231).

Furthermore, in *Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1146 (E.D. Cal. 2005), the court held that plaintiffs could name municipalities and their law enforcement departments if they were acting in their official capacities. Arizona courts have recognized that municipalities and counties, as well as law enforcement departments that represent the municipality, may be named in civil rights actions where the entity's policies, practices, or actions are the subject of the litigation.

Plaintiff also cites *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), where the U.S. Supreme Court held that municipal liability can attach when a decisionmaker with final authority to establish policy makes a deliberate choice to follow a course of

action. The Sheriff, as an official policymaker of Yavapai County, was involved in decision-making processes that led to the violations alleged in Plaintiff's Complaint, and therefore, Yavapai County and YCSO can be held liable.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court established that municipalities and other local government units can be liable under § 1983 when the constitutional violation results from a governmental policy or custom. Plaintiff has alleged that the Yavapai County Sheriff's Office has a pattern of inadequate training and accountability as well as an inadequate complaint tracking system that directly resulted in the violation of his rights, thus meeting the requirements of Monell (Complaint, ¶¶ 216-231)

Therefore, Plaintiff's claims against Yavapai County are properly pled under the Monell framework, and to the extent that the Sheriff's Office represents the County, it remains a proper entity for the purpose of litigation. The County's involvement in the Sheriff's Office's decision-making and training processes forms a sufficient basis for liability in this case.

For the reasons set forth above, Plaintiff contends that the Yavapai County Sheriff's Office, in conjunction with Yavapai County itself, is a proper defendant. The Sheriff's Office, as a department of Yavapai County, can be held liable for its actions and policies that led to the violations of Plaintiff's constitutional rights.

**V. Plaintiff's State Law Claims Should Not Be Barred Due to Statute of Limitations**

Defendants argue that Plaintiff's state law claims are barred by the one-year statute of limitations under A.R.S. § 12-821, since the Complaint was filed on April 19, 2024, and the final charges were dismissed on March 31, 2023. Plaintiff acknowledges that, on the surface, the timing of the filing exceeds the one-year statutory limit. However,

Plaintiff challenges the fairness of the one-year statute of limitations for claims against public entities compared to the two-year statute of limitations for similar claims between private parties under A.R.S. § 12-542 and similar statutes.

This difference in limitations periods creates an unfair advantage for government defendants and disadvantages plaintiffs with legitimate claims. In *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 385, 381 P.2d 107, 108 (1963), the Arizona Supreme Court abolished the doctrine of governmental immunity, stating: "We are of the opinion that when the reason for a certain rule no longer exists, the rule itself should be abandoned. After a thorough re-examination of the rule of governmental immunity from tort liability, we now hold that it must be discarded as a rule of law in Arizona and all prior decisions to the contrary are hereby overruled." This decision was intended to ensure that government entities could be held accountable in the same manner as private individuals or organizations.

Despite the abolition of blanket governmental immunity, the subsequent statutory scheme, which includes A.R.S. § 12-821 and A.R.S. § 12-821.01, effectively reintroduces procedural barriers that favor public entities over private parties. In *Humphrey v. State*, 252 Ariz. 298, 304 (2022), the Arizona Court of Appeals acknowledged that "public entities benefit from procedural defenses, such as shorter limitations periods and the requirement of filing a notice of claim, that are not available to private defendants." These procedural defenses create a disparity that favors government defendants, undermining the principles of fairness and accountability originally established in *Stone*.

The one-year statute of limitations for claims against public entities, combined with the strict notice requirements of A.R.S. § 12-821.01, places an undue burden on plaintiffs, effectively shielding government entities from liability in ways that private parties are not protected. Plaintiff argues that this disparity is inconsistent with the Arizona Supreme Court's intention in *Stone* to place government entities on an equal

footing with private entities regarding liability for tortious conduct. The difference in limitations periods, which allows only one year for claims against the government while permitting two years for similar claims between private parties, denies plaintiffs an adequate opportunity to seek justice.

In light of these considerations, Plaintiff asserts that the statutory limitations period for claims against public entities should be viewed critically by this Court, given its inequitable impact on individuals seeking redress for legitimate grievances. The arbitrary distinction between public and private defendants regarding limitations periods serves no legitimate purpose other than to unfairly insulate government actors from accountability.

**VI. County Liability Under § 1983 Is Properly Pled**

Defendants argue that Yavapai County cannot be held liable for the actions of its deputies under the theory of respondeat superior. Plaintiff asserts, however, that his claims are not based on vicarious liability but instead on the County's own actions, policies, and customs that directly led to the deprivation of Plaintiff's constitutional rights. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities are liable under § 1983 when the alleged constitutional violation results from an official policy, custom, or when it is caused by deliberate indifference in training or supervising employees.

**A. Monell Liability for Unconstitutional Policies and Customs**

Under *Monell*, a municipality can be held liable if a constitutional violation results from a policy, practice, or custom of the municipality. In *Monell*, the Supreme Court stated that a local government could be held liable under § 1983 when an "official policy or custom" causes the plaintiff to suffer a constitutional injury. Here, Plaintiff

13

has alleged that Yavapai County maintained policies or customs that fostered an environment in which the unconstitutional conduct of Deputies Contreras, Boehm, Johnson, and Boelts was condoned, leading to Plaintiff's injury (Complaint, ¶¶ 215-231).

The Ninth Circuit has held that a plaintiff can demonstrate municipal liability under *Monell* by showing a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." See *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff has alleged that Yavapai County has a custom of failing to properly investigate complaints against deputies, retaliating against individuals who exercise their constitutional rights, and permitting unreasonable seizures without probable cause. These allegations show a pervasive and entrenched practice within the Sheriff's Office, making the County liable for the resulting constitutional violations.

**B. Liability for Failure to Train and Supervise**

Municipal liability under *Monell* can also be based on a failure to train or supervise when such failure amounts to "deliberate indifference" to the rights of individuals. In *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the Supreme Court held that "inadequacy of police training may serve as the basis for § 1983 liability" when the failure to train reflects a "deliberate" or "conscious" choice by the municipality. Plaintiff alleges that Yavapai County failed to adequately train its deputies on the constitutional rights of individuals, including the right to be free from retaliatory arrest and unreasonable seizure. This failure was the moving force behind the constitutional violations suffered by Plaintiff (Complaint, ¶¶ 121-123, 227-228).

In *Connick v. Thompson*, 563 U.S. 51, 61 (2011), the Court clarified that municipal liability may arise where the need for more or different training is "so obvious" that the failure to provide it is a deliberate choice by the municipality. Plaintiff has alleged

that Yavapai County had reason to know of deficiencies in its training and supervision of deputies, particularly with regard to handling confrontations and respecting individuals' First, Fourth and Fourteenth Amendment rights. These deficiencies were well-known due to prior incidents, litigation, and citizen complaints, yet the County failed to act, which constitutes deliberate indifference.

**C. Ratification by a Final Policymaker**

Another form of municipal liability under *Monell* arises when an official with final policymaking authority ratifies a subordinate's unconstitutional conduct. In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), the Court stated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Plaintiff alleges that the actions of Deputies Contreras and Boehm were ratified by supervisory personnel within the Sheriff's Office, who were aware of the misconduct but failed to take corrective action or discipline the deputies involved (Complaint, ¶¶ 230-231).

In *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004), the Ninth Circuit reiterated that a municipality can be held liable when a final policymaker ratifies the unconstitutional conduct of subordinates, thereby endorsing that conduct as official policy. Plaintiff has alleged that Yavapai County officials ratified the actions taken against him by failing to investigate the deputies' conduct, thereby affirmatively endorsing their unlawful behavior as consistent with County policy. This ratification by those in positions of authority makes Yavapai County liable under § 1983.

Yavapai County is liable under § 1983 for the unconstitutional actions taken by its deputies due to its failure to train, its policies and customs that fostered unlawful conduct, and its ratification of unconstitutional actions by those with policymaking authority. Plaintiff's claims are based not merely on a theory of vicarious liability but

on the County's own actions and deliberate indifference to the constitutional rights of individuals.

**VII. Plaintiff's Claims for Punitive Damages Against Individual Defendants**

Defendants argue that Plaintiff cannot seek punitive damages against the individual officers. However, punitive damages are appropriate in a § 1983 action where a defendant's conduct is shown to be motivated by evil motive or intent, or where it involves reckless or callous indifference to the federally protected rights of others. Plaintiff has clearly alleged such conduct on the part of Deputies Contreras, Boehm, Johnson, and Boelts who acted with malice, retaliated against Plaintiff for exercising his First Amendment rights, and unlawfully seized him without probable cause, all in violation of his constitutional rights.

**A. Legal Standard for Punitive Damages in § 1983 Actions**

Punitive damages are available under 42 U.S.C. § 1983 in situations where the conduct of government officials is particularly egregious. In *Smith v. Wade*, 461 U.S. 30, 56 (1983), the U.S. Supreme Court held that punitive damages may be awarded in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." The purpose of punitive damages is to punish the wrongdoer and deter similar conduct in the future.

In this case, Plaintiff alleges that Deputies Contreras, Boehm, Johnson, and Boelts acted with a retaliatory motive, unlawfully detained him, labeled him as a "sovereign citizen" without any factual basis, and filed false charges solely to undermine his credibility and justify further punitive actions (Complaint, ¶¶ 50-75, 90-110). Such actions, aimed at intimidating and suppressing Plaintiff's constitutionally protected

16

activities, demonstrate a reckless disregard for his constitutional rights and justify the imposition of punitive damages.

### B. Malice and Reckless Indifference Demonstrated by Defendants

Plaintiff's allegations demonstrate that the conduct of Deputies Contreras, Boehm, Johnson, and Boelts was not only unconstitutional but was also carried out with malice and reckless disregard for Plaintiff's rights. Specifically, Plaintiff alleges that Deputies Contreras and Boehm intentionally escalated a non-threatening situation, unlawfully detained Plaintiff without probable cause, and did so with the express purpose of retaliating against him for exercising his First, Fourth, and Fourteenth Amendment rights (Complaint, ¶¶ 90-149).

The Ninth Circuit has made it clear that punitive damages are appropriate in civil rights cases where a public official's conduct is particularly blameworthy. In *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005), the court held that "[p]unitive damages may be awarded when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." The actions of Deputies Contreras, Boehm, and especially Johnson, and Boelts, as alleged, meet this standard because their conduct was retaliatory and driven by a desire to silence Plaintiff's exercise of free speech.

Furthermore, in *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995), the court explained that punitive damages may be awarded in § 1983 cases where there is evidence that the defendant acted with deliberate indifference or with a malicious intent to violate the plaintiff's rights. Plaintiff has alleged facts indicating that the deputies knew their actions were unlawful, yet they proceeded in a manner intended to intimidate and retaliate against Plaintiff, showing deliberate indifference to his rights.

**C. No Immunity for Malicious or Recklessly Indifferent Conduct**

The doctrine of qualified immunity does not protect government officials from liability for punitive damages when their conduct is motivated by malice or shows a reckless disregard for an individual's constitutional rights. In *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the Supreme Court noted that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Here, Plaintiff's allegations indicate that Deputies Contreras, Boehm, Johnson, and Boelts knowingly violated Plaintiff's rights, and their actions were neither objectively reasonable nor conducted in good faith.

In *Smith v. Wade*, 461 U.S. at 56, the Court emphasized that punitive damages are intended to deter and punish conduct that is egregiously unconstitutional. Plaintiff's allegations that the deputies acted with malicious intent and retaliated against him specifically for his protected speech demonstrate the type of egregious behavior that punitive damages are designed to address.

Plaintiff's claims for punitive damages are fully supported by the allegations of malicious and recklessly indifferent conduct by Deputies Contreras, Boehm, Johnson, and Boelts. Their actions, as described in the Complaint, were motivated by a desire to retaliate against Plaintiff for exercising his First Amendment rights, involved an unlawful seizure in violation of the Fourth Amendment, and reflected a deliberate indifference to Plaintiff's constitutional rights under the Fourteenth Amendment. Accordingly, Plaintiff respectfully requests that this Court allow his claims for punitive damages against the individual Defendants to proceed, as they serve the important purposes of punishment and deterrence for such egregious violations of constitutional rights.

**Conclusion**

For the reasons stated above, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss in its entirety and/or grant any relief the Court finds equitable and just.

    RESPECTFULLY SUBMITTED this 10th day of November 2024

I state under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

    By: /s/ *Corey Drew*
    Corey Drew  11/10/24
    Plaintiff, *In Pro Per*

## Certificate Of Service

_____

I CERTIFY that I emailed a copy of this PLAINTIFF RESPONSE TO DEFENDANTS COUNTY OF YAVAPAI, YAVAPAI COUNTY SHERIFF OFFICE, BOELTS, AND JOHNSON'S MOTION TO DISMISS COMPLAINT on 11/10/24 to:

Defendants attorney James M. Jellison
jim@jellisonlaw.com

cc:
Rebecca@jellisonlaw.com

                                            By: /s/ *Corey Drew*
                                                Corey Drew   11/10/24

_____