1  Gregg P. Leslie (Bar # 035040), Gregg.Leslie@asu.edu*
   Aaron A. Baumann (Bar # 033754), Aaron.Baumann@asu.edu*
2  Nicole Salars, nsalars@asu.edu**
   First Amendment Clinic, Public Interest Law Firm
3  Arizona State University Sandra Day O'Connor College of Law
   111 E. Taylor St., Mail Code 8820
4  Phoenix, AZ 85004
   Telephone: (804) 727-7398
5  *Certified supervising attorney pursuant to L.R. Civ. 83.4(e)
   **Certified limited practice student pursuant to L.R. Civ. 83.4(e)
6  *Attorneys for Amicus Curiae David Morgan*

7              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF ARIZONA**
8

| | |
|---|---|
| 9   Corey Drew,<br>                     Plaintiff,<br>10<br>         vs.<br>11<br>  County of Yavapai; Yavapai County<br>12  Sheriff's Office; Dennis McGrane; Tom<br>  Boelts; John Johnson; Samuel Contreras;<br>13  Patrick Boehm; Larry Hooten; et. al.<br>14<br>                     Defendants. | No. 3:24-cv-08073-KLM-MTM<br><br>**AMICUS CURIAE DAVID MORGAN'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

15
16
17                    **STATEMENT OF INTEREST**

18       Amicus curiae is an investigative journalist and publisher of *The Cochise County*

19  *Record*, a news service in Cochise County, Arizona, focused on local government, police,

20  and the courts. He is a member of Investigative Reporters & Editors, a nonprofit

21  organization that provides training and resources to investigative journalists, and a

                                    1

recipient of the Order of the Silver Key, an award offered by the Society of Professional Journalists to journalists who have worked in the field for at least 25 years. Cochise County and Yavapai County are both small, rural counties underserved by local news. *See* "What Exactly Is A 'News Desert'?, Center for Innovation and Sustainability in Local Media, www.cislm.org/what-exactly-is-a-news-desert/, accessed November 7, 2024. Local government and law enforcement in such areas can be extremely responsive to critical journalism, putting Mr. Morgan at risk of retaliation when he reports on government misconduct. Mr. Morgan seeks to ensure that government officials who retaliate to chill critical speech are held accountable.

## ARGUMENT

### I.  Defendants Johnson and Boelts are not entitled to qualified immunity.

To determine whether to grant a defendant qualified immunity from a § 1983 claim, courts must decide whether (1) the defendant violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *See D.C. v. Wesby*, 538 U.S. 48, 62 (2018). While qualified immunity is to be resolved "at the earliest possible stage of litigation" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation omitted), dismissal at the pleading stage is appropriate through a grant of qualified immunity only when a court can determine, based on the complaint itself, that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (citing *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). While qualified immunity is intended to shield government officials from insubstantial claims, this shielding interest is

2

balanced with "the need to hold public officials accountable when they exercise power irresponsibly[.]" *Pearson,* 555 U.S. at 231.

Here Plaintiff has pled facts that, taken as true, establish a constitutional violation by Defendants Johnson and Boelts, who directed their subordinate law enforcement officers to arrest Plaintiff in retaliation for his speech. This violation of the First Amendment is established by Plaintiff's allegation that: (1) he was engaged in a constitutionally protected activity; (2) defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) his protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien,* 818 F.3d at 932. The unlawfulness of Defendants' conduct is clearly established by Ninth Circuit precedent holding it "unlawful to arrest a plaintiff in retaliation for their First Amendment activity, notwithstanding the existence of probable cause." *Ballentine v. Tucker*, 28 F.4th 54, 65 (9th Cir. 2022).

The Court should deny Defendants Johnson and Boelts' assertion of qualified immunity and deny Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim because Plaintiff has plausibly alleged that Defendants Johnson and Boelts violated a federal constitutional right and the unlawfulness of their conduct was clearly established at the time. Dismissing Plaintiff's claims would sanction Defendants Johnson and Boelts' irresponsible exercise of power, give license to law enforcement officials retaliating against citizens who engage in core expressive acts protected by First Amendment, and chill political speech throughout Arizona.

**A.  Defendants Johnson and Boelts violated a constitutional right by directing their subordinates to arrest Plaintiff in retaliation for his speech.**

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: (1) he was engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien,* 818 F.3d at 932.

        **i.  Plaintiff was engaged in constitutionally protected activity.**

Plaintiff has plausibly alleged that he was engaged in constitutionally protected activity: submitting a complaint to the Yavapai County Sheriff's Office and publishing a video online of his detention by Yavapai County Sheriff's deputies. *Complaint for Violation of Civil Rights*, ¶ 114-116, 127. These facts fall within the ambit of activity protected by the First Amendment. *See e.g. Maya v. County of San Bernardino* 2023 WL 4383344 (Cent. D. Cal. 2023) (adopting the 5th Circuit's holding in *Gates v. City of Dallas*, 729 F.2d 343, 345 (5th Cir. 1984) that "the First Amendment guarantees citizens the right to petition the government, including utilizing a police department's citizen complaint process") and *O'Brien,* 818 F.3d at 933 (Plaintiff's "expression of his views [by posting on a website his opposition to the student government and school administration]" qualified as constitutionally protected activity under the First Amendment).

### ii. Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity.

Plaintiff has plausibly alleged that Defendants Johnson and Boelts' actions would chill a person of ordinary firmness from engaging in the protected activities of petitioning the government and publishing video online of his detention. This standard is "generic and objective. Whether [Plaintiff] himself was, or would have been, chilled is not the test." *O'Brien,* 818 F.3d at 933. Courts have regularly held that arrest is sufficient to chill speech, going so far as to say that "to state that '[a]rresting someone in retaliation for their exercise of free speech rights' is sufficient to chill speech is an understatement." *Lacey v. Maricopa Cty.,* 693 F.3d 896, 917 (9th Cir. 2012) (quoting *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008)). Courts have also held that the mere threat of arrest is sufficient to chill speech. *See Reed v. Lieurance*, 863 F.3d 1196, 1212 (9th Cir. 2017). The pleadings here—that Defendants directed Plaintiff's arrest in retaliation for his protected expression—establish that a person of ordinary firmness subjected to such actions would have been chilled from continuing to engage in protected speech.

### iii. Plaintiff's complaint and online publication were a substantial or motivating factor in Defendants Johnson and Boelts' conduct.

Plaintiff has plausibly alleged that petitioning the government and publishing video online of his detention were a substantial or motivating factor in Defendants Johnson and Boelts' conduct. To satisfy this element, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury'… the motive must *cause* the injury. Specifically, it must be a 'but-for' cause,

5

1 meaning that the adverse action against the plaintiff would not have been taken absent the

2 retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019) (quoting *Hartman v.*

3 *Moore,* 547 U.S. 250, 259-60 (2006)). This but-for causation requires a "nexus between

4 the defendant's actions and an intent to chill speech." *Arizona Students' Ass'n v. Arizona*

5 *Bd. of Regents,* 824 F.3d 858, 867 (9th Cir. 2016).

6       Plaintiff has plausibly alleged that Defendants Johnson and Boelts' actions caused

7 his injury; that they had retaliatory animus; and that their retaliatory animus was the but-

8 for cause of Plaintiff's injury.

9       First, Plaintiff alleged that Defendants Johnson and Boelts' actions—directing

10 Sergeant Hooten to re-investigate Plaintiff's conduct and file specific charges decided prior

11 to Sergeant Hooten's re-investigation—caused Plaintiff's injury. *Complaint for Violation*

12 *of Civil Rights*, ¶ 148, 165-6, 169, 172-3, 183-5, 208.

13       Second, Plaintiff alleged that Defendants Johnson and Boelts had retaliatory

14 animus. *Complaint for Violation of Civil Rights*, ¶ 172-4, 176 (Boelts), ¶ 186-7 (Johnson).

15 In assessing the kind of evidence that can establish retaliatory animus, courts have routinely

16 affirmed the value and, often, the necessity of relying on circumstantial evidence. *See e.g.*

17 *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("The reason for treating

18 circumstantial and direct evidence alike is both clear and deep rooted: Circumstantial

19 evidence is not only sufficient, but may be more certain, satisfying and persuasive than

20 direct evidence" (internal quotation omitted)) and *Coszsalter v. City of Salem*, 320 F.3d

21 968, 977 (9th Cir. 2003) (recognizing three types of circumstantial evidence probative of

retaliatory motive in the context of an alleged First Amendment retaliatory discharge from public employment: "proximity in time between the protected action and the allegedly retaliatory employment decision,… evidence that his employer expressed opposition to his speech'…[and] evidence that his employer's proffered explanations for the adverse employment action were false and pre-textual" (internal quotation omitted)). Here, Plaintiff has plausibly alleged circumstantial facts that, taken as true, establish Defendants Johnson and Boelts had retaliatory animus in directing Plaintiff's arrest.

Third, Plaintiff alleged that Defendants Johnson and Boelts' orders to Sergeant Hooten were the but-for cause of Plaintiff's arrest. In *Hartman*, the Supreme Court acknowledged that, to support a First Amendment retaliation claim, a defendant's retaliatory motive must be the but-for cause of a plaintiff's injury, reasoning that, though "it may be dishonorable to act with an unconstitutional motive… [such] action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman*, 547 U.S. at 260. Later, in considering this standard in the context of retaliatory arrest claims, the Court in *Nieves* recognized that "retaliatory arrest claims involve causal complexities…[l]ike retaliatory prosecution cases, 'retaliatory arrest cases also present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury[.]'" *Nieves* 587 U.S. at 401 (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)). Because of these causal complexities, the Court described a preference for objective evidence. *Ibid.* at 402 (holding that the absence of probable cause will "generally provide weighty evidence that the officer's animus caused the arrest,

whereas the presence of probable cause will suggest the opposite").

While acknowledging the general probative value of probable cause, the Court also framed a clear exception "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Ibid.* at 406. In its recent *per curiam* decision in *Gonzalez v. Trevino*, 602 U.S. ___ (2024), the Court clarified this exception, holding that "[t]o fall within the exception, a plaintiff must produce evidence to prove that his arrest occurred in such circumstances. The only express limit [] placed on the sort of evidence a plaintiff may present for that purpose is that it must be objective in order to avoid 'the significant problems that would arise from reviewing police conduct under a purely subjective standard'" (quoting *Nieves,* 587 U.S. at 407).

Here, Plaintiff has alleged that he was arrested without probable cause. Notwithstanding the existence of probable cause, however, if the Court applies the *Nieves* standard, Plaintiff has alleged objective facts that, taken as true, could prove he was arrested where officers typically exercise discretion not to do so: first, after initially investigating Plaintiff's alleged crimes, Deputies Boehm and Contreras and Lieutenant Barbaro declined to arrest Plaintiff precisely because it was the kind of situation where officers typically exercise discretion not to arrest (*Complaint for Violation of Civil Rights* ¶ 108-9, 117, 120); second, without receiving any new facts or evidence, Defendants Johnson and Boelts ordered a new investigation and Plaintiff's arrest—a situation where they typically exercise their discretion *not* to initiate new investigations of persons who *have not* engaged in protected speech. *Complaint for Violation of Civil Rights* ¶ 137-149.

8

These facts establish that Defendants Johnson and Boelts' actions were the but-for cause of Plaintiff's injury.

Lastly, it bears noting that the Supreme Court declined to settle whether the *Nieves* no-probable cause rule applies only to claims predicated on split-second arrests or also to deliberative ones. *See Gonzalez,* 602 U.S. ___ ("[b]ecause we agree with Gonzalez's first argument, we do not need to reach her second [concerning whether the no-probable-cause rule applies]"). Thus, even if the Court finds an absence of sufficient objective evidence as contemplated by the *Nieves* exception, the Court should distinguish *Nieves* and find, on the basis of the plausible connection between Defendants Johnson and Boelts' retaliatory animus and their decision to order Plaintiff's arrest, that Plaintiff has sufficiently established but-for causation in light of the difference between split-second and deliberative arrests.

**B.  The unlawfulness of Defendants Johnson and Boelts' conduct was clearly established.**

When a defendant violates a federal constitutional right, he is shielded from liability if the unlawfulness of his conduct was not clearly established at the time of the conduct. *See D.C. v. Wesby*, 538 U.S. 48, 62 (2018). To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). While this "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (*per*

*curiam*). Overcoming an assertion of qualified immunity does not require that "the very action in question has previously been held unlawful, but [rather] that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640 (internal citation omitted). To be controlling, precedent establishing an official's conduct as unlawful may come from the Supreme Court, the Ninth Circuit, or a consensus of courts outside the Ninth Circuit. *Sharp v. Cty. Of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

Here, there is no need to go beyond the Ninth Circuit for clear precedent establishing Defendants Johnson and Boelts' conduct as unlawful. In *Skoog v. Cty. Of Clackamas*, 469 F.3d 1221 (9th Cir. 2006) (*abrogated in part by Nieves,* 587 U.S. 391), the court defined the contours of the right, as relevant to its qualified immunity analysis, as "the right of an individual to be free of police action motivated by retaliatory animus but for which there was probable cause." *Skoog,* 469 F.3d at 1235. In *Ballentine*, the court further explained that, while *Nieves* abrogated *Skoog* in part by holding that "to *prevail* on a First Amendment retaliatory arrest claim… [a] plaintiff either 'must plead and prove the absence of probable cause for the arrest' or that the offense at issue is one for which 'officers have probable cause to make arrests, but typically exercise their discretion not to do so'" *Ballentine,* 28 F.4th at 65 n.1 (quoting *Nieves,* 587 U.S. at 1721-28) (emphasis added), *Nieves* did not abrogate *Skoog*'s holding that it is "unlawful to arrest Plaintiffs in retaliation for their First Amendment activity, notwithstanding the existence of probable cause." *Ballentine,* 28 F.4th at 65.

Moreover, the court in *Ballentine* rebuffed the defendant's attempt to distinguish the

facts of his case and narrow the right established in *Skoog*, holding that "any reasonable officer would understand that police action 'falls squarely within the prohibition[] of… *Skoog*' where it is 'motivated by retaliatory animus, even if probable cause existed for that action.'" *Ballentine,* 28 F.4th at 66 (quoting *Ford v. City of Yakima*, 706 F.3d 1188, 1196 (9th Cir. 2013). The Court in *Ballentine* rejected the defendant's arguments that, unlike in *Skoog,* he had presented a detailed warrant supported by probable cause prior to Plaintiff's arrest, and unlike in *Ford*, he engaged in a thorough and calm investigation before presenting all the evidence to a neutral magistrate, and that therefore the unlawfulness of his conduct was not clearly established. *See Ballentine,* 28 F.4th at 66-67. The Court held that, despite these differences, the defendant was on notice as to the unlawfulness of his conduct. *Ballentine,* 28 F.4th at 67 ( "officers can be on notice that their conduct is unlawful even in novel factual circumstances…Where a case 'involve[s] the kind of mere application of settled law to a new factual permutation,' 'we assume an officer had notice that his conduct was unlawful'") (quoting *Ford*, 706 F.3d at 1195).

Defendants Johnson and Boelts were similarly on notice that their conduct in directing subordinate officers to arrest Plaintiff in retaliation for his speech was unlawful, notwithstanding the existence of probable cause.

## CONCLUSION

Based upon the foregoing, Amicus Curiae David Morgan opposes Defendants' Motion to Dismiss Plaintiff's Complaint with respect to the First Amendment retaliation claim against Defendants Johnson and Boelts.

1  Respectfully submitted this 15th day of November 2024.

2

3                              FIRST AMENDMENT CLINIC

4                       By    /s/ Gregg P. Leslie
                              Gregg P. Leslie
5                             Aaron A. Baumann
                              Nicole Salars
6                             First Amendment Clinic
                              Public Interest Law Firm
7                             *Attorneys for Amicus Curiae David Morgan*

8

9

10

11

12

13

14

15

16

17

18

19

20

21