**JELLISON LAW OFFICES, PLLC**
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
Telephone: 480.659.4244
Facsimile: 480.659.4255
JAMES M. JELLISON, ESQ., #012763
jim@jellisonlaw.com
*Counsel for Yavapai County; Yavapai County Sheriff's Office; Boelts; Johnson*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Corey Drew,<br><br>                          Plaintiff,<br><br>v.<br><br>County of Yavapai; Yavapai County Sheriff's Office; Dennis McGrane; Tom Boelts; John Johnson; Samuel Contreras; Patrick Boehm; Larry Hooten; et. al.,<br><br>                          Defendants. | Case No. 3:24-cv-08073-KML-MTM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>**(Doc. 20)** |

Defendants County of Yavapai, Yavapai County Sheriff's Office, Tom Boelts, and John Johnson, by and through counsel undersigned, hereby submit their Reply in support of their Motion to Dismiss (Doc. 20). [1]

**I.      PLAINTIFF ARGUES AN INCORRECT STANDARD OF REVIEW.**

Plaintiff does not dispute that the Supreme Court's pleading standard in *Iqbal* applies to the pleading of his claims. Plaintiff seems to argue, however, that *Johnson v. City of Shelby,* 574 U.S. 10 (2014), excuses Plaintiff from pleading specific facts in support

---

[1] Plaintiff exceeds the page limitations in LRCiv. 7.2(e)(1) in his Response. The Yavapai County Defendants are mindful that Plaintiff is proceeding *pro per* and, on this occasion, do not object to the Court considering the Response in full.

of a particular claim for relief. As to the necessity of plausible factual allegations, however, this Court applies the Supreme Court's rulings in *Iqbal* and *Twombly*. *Alvarez v. County of Maricopa*, 2010 WL 2594315, at *2 (D.Ariz. 2010). Curiously, at the same time Plaintiff argues *Johnson* provides the proper standard of review, Plaintiff also cites to the *Iqbal/Twombly* "plausible claim" standard which applies to the pleading of individual and *Monell*-based §1983 claims, as well as state law claims. *See also, AE ex rel. Hernandez v. County of Tulare,* 666 F.3d 631, 637 (9th Cir. 2012); *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011); *Boisvert v. Lohan*, 617 Fed.Appx. 810 (9th Cir. 2015); *Foster v. Gentry*, 518 Fed.Appx. 594, 595, 2013 WL 2137571, at *1 (9th Cir. 2013). Also ignored by Plaintiff, when a motion to dismiss raises qualified immunity, the court assesses whether the operative complaint pleads a plausible claim that withstands qualified immunity. *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). Here, no plausible claim is stated, and no facts support a plausible claim that withstands qualified immunity as to Boelts and Johnson.

**II.   PLAINTIFF'S ARGUMENTS ON QUALIFIED IMMUNITY ARE FLAWED BECAUSE THEY PROVIDE CASE LAW ONLY AT THE HIGHEST LEVELS OF GENERALITY AND FAIL TO ASSESS QUALIFIED IMMUNITY AS TO THE TWO INDIVIDUAL DEFENDANTS UNDER THE PARTICULAR FACTS ALLEGED.**

A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] lawful, in light of clearly established law and the information the … officer[] possessed." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). The Supreme Court has admonished that, to be clearly established, "[t]he contours of [a] right must be sufficiently clear that a reasonable [officer] would understand that what he is doing violates that right." *Id.* at 640. In other words, "existing precedent must have placed the … constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Moreover, clearly established law must be determined "'in light of the specific

context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004).

It bears emphasizing that the analysis must always be trained on the particular facts and circumstances under review. *Brooks v. Clark Cty.*, 828 F.3d 910, 919–20 (9th Cir. 2016). "The dispositive question is 'whether the violative nature of [the officer's] *particular* conduct is clearly established.'" *Mullenix* at 308, *quoting al–Kidd*, 563 U.S. at 742. "This inquiry 'must be undertaken in light of the *specific context* of the case, not as a broad general proposition.'" *Id.* (emphasis added). "In other words, the plaintiff must point to prior case law that articulates a constitutional rule specific enough to alert *this* officer *in this case* that *his particular conduct* was unlawful." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). To achieve that kind of notice, the prior precedent must be "controlling"—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Id., citing Wilson v. Layne*, 526 U.S. 603, 617 (1999). "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not [generally act unconstitutionally], deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). The plaintiff bears the burden to supply the contextually specific, clearly established law. *Shafer v. Cty. of Santa Barbara,* 868 F.3d 1110, 1118 (9th Cir. 2017); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). And, the deciding court district court is required to apply the correct standard, including "carefully examin[ing] the specific factual allegations against each individual defendant." *Cunningham v. Gates,* 229 F.3d 1271, 1287 (9th Cir. 2000).

The Supreme Court has repeatedly reversed decisions denying qualified immunity because the lower courts improperly defined the rights and conduct at issue at too high a level of generality. *Carroll v. Carman,* ___ U.S. ___, 135 S.Ct. 348, 349-50 (2014)

(officers entitled to qualified immunity from Fourth Amendment claim based on alleged unlawful entry into side yard of residence to speak with resident at side door because law was not clearly established whether officers may conduct "knock and talk" at any entrance open to visitors or only front doors); *Wood v. Moss,* ___ U.S. ___, 134 S.Ct. 2056, 2067-68 (2014) (Secret Service agents entitled to qualified immunity for moving protesters to less favorable location than that of other protesters in light of security concerns in protecting President and absence of clearly established law concerning obligation to assure comparable positions for all protesting groups); *Plumhoff v. Rickard,* ___ U.S. ___, 134 S.Ct. 2012, 2023-24 (2014) (police officers entitled to qualified immunity for use of deadly force to terminate pursuit of fleeing vehicle when at time of incident no case law would have put officers on notice of parameters of use of force in that situation); *Mullenix v. Luna,* ___ U.S. ___, 136 S.Ct. 305 (2015) (same); *Stanton v. Sims,* ___ U.S. ___, 134 S.Ct. 3 (2013) (police officer entitled to qualified immunity for hot pursuit of misdemeanor suspect into curtilage); *Ryburn v. Huff,* 565 U.S. 469, 474 (2012) (officers are entitled to qualified immunity for entering residence without warrant because "[n]o decision of this Court has found a Fourth Amendment violation on facts even roughly comparable to those present in this case. On the contrary, some of our opinions may be read as pointing in the opposite direction"); *Ashcroft v. al-Kidd,* 563 U.S. at 741 (Attorney General entitled to qualified immunity for invoking material witness warrant procedure as pretext for another investigation; at time of events, "not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional"); *White v. Pauly,* 137 S. Ct. 548, 551-52 (2017) (*Graham,* standards too general to put officer on notice that use of force in unique circumstances could result in liability: "Today, it is again necessary to reiterate the longstanding principle that 'clearly

4

established law' should not be defined 'at a high level of generality.'").

In addition to assessing clearly-established law at an appropriate level of specificity, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Dupris v. McDonald*, 2010 WL 231548, at *5 (D.Ariz., 2010), *citing*, *Ashcroft v. Iqbal,* 556 U.S. 662, 667 (2009) ("[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Each defendant is entitled to an individualized assessment of qualified immunity. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). In *Chuman v. Wright,* 76 F.3d 292 (9th Cir. 1996), the Ninth Circuit rejected "the 'team effort' standard [that] allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Id.* at 295. There, the Ninth Circuit held a police officer's "[b]eing a mere bystander [to his colleagues' conduct] was insufficient" to support §1983 liability. *Id.* at 294; *see also, Jones v. Williams*, 297 F.3d 930, 934-937 (9th Cir. 2002) (to find "individual officers liable when there is no evidence to link them to specific actions would [be] erroneous as a matter of law").

Here, Plaintiff's arguments regarding qualified immunity are flawed because Plaintiff addresses qualified immunity from the highest levels of generality, from the standpoint of facts which do not apply to the allegations against Boelts and Johnson, and fail to show how each individual Defendant has allegedly violated clearly established constitutional law. Having failed to meet his burden to show individualized violations of clearly established law, this Court must apply the entitlement to qualified immunity.

### *Tom Boelts*

Capt. Boelts emailed Johnson about having a photograph of Plaintiff for others to check out Plaintiff's YouTube channel, and do a threat assessment of Plaintiff. (Doc. 1, ¶¶

172-176). Although Plaintiff's Response suggests these actions may violate the First or Fourth Amendment, Plaintiff cites to no additional facts alleged in the Complaint, or clearly established case law, that these threadbare allegations violate the First or Fourth Amendments. Instead, Plaintiff attempts to boot-strap a constitutional claim against Boelts based on allegations against unserved parties Contreras and Boehm, or by incorrectly suggesting that Boelts allegedly directed the arrest of Plaintiff. First, Boelts is not responsible for the on-scene decisions of Contreras or Boehm, *see, Cunningham, supra.;* and Boelts is not alleged to have commanded Plaintiff's arrest. Plaintiff's arguments, therefore, do not provide a sufficient basis upon which to deny qualified immunity to Boelts as they neither show a violation of the U.S. Constitution nor a violation of clearly established constitutional law. Plaintiff has failed to sustain his burden to show that qualified immunity should be denied based on the allegations directed at individual defendant Boelts.

### *John Johnson*

Johnson's only role was to field a citizen complaint from Plaintiff and disagree with it, order a follow-up investigation, and remind other person that they had no obligation to speak, or interact, with Plaintiff. (Doc. 1, ¶¶ 114; 117-118; 120; 130; 135-138; 148; 186-187). As with Boelts, Plaintiff's Response cites no clearly established law putting Johnson on notice that ordering a follow-up investigation or correctly advising other persons of their rights to avoid interacting with Plaintiff is a violation of the U.S. Constitution. Also as with Boelts, Plaintiff attempts to boot-strap a constitutional claim against Johnson based on allegations against unserved parties Contreras and Boehm, or by incorrectly suggesting that Johnson is alleged to have directed the arrest of Plaintiff. Johnson is not responsible for the on-scene decisions of Contreras or Boehm, *see, Cunningham, supra.;* and he also is not alleged to have commanded Plaintiff's arrest. Again, although Plaintiff's Response

suggests these actions may violate the First or Fourth Amendment, Plaintiff cites to no facts alleged in the Complaint, or clearly established case law, that these threadbare allegations as to Johnson violate the First or Fourth Amendments. Plaintiff has failed to sustain his burden to show that qualified immunity should be denied based on the allegations directed at individual defendant Johnson.

### III. PLAINTIFF'S CONCLUSORY ALLEGATIONS DO NOT SUPPORT HIS *MONELL* CLAIMS.

The Ninth Circuit has adopted the following pleading standards for *Monell* claims:

> First, to be entitled to the presumption of truth, allegations in a complaint ... may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*A.E. ex rel. Hernandez,* 666 F.3d at 637. In *Forbes v. County of Orange*, 2012 WL 12914722, at *3 (C.D.Cal., 2012), relying on this standard, the court held as insufficient conclusory allegations that included such things as "(1) '[e]mploying and retaining as [Sheriff] Deputies ... personnel, including [Koenig and the Doe Defendants], who [the County] ... knew or reasonably should have known had dangerous propensities for abusing their authority by using excessive force and denying medical care'; (2) 'failing to adequately train deputies/officers, including [the Doe Defendants], and failing to institute appropriate policies[ ] regarding constitutional procedures and practices for use of force'; and (3) '[b]y having and maintaining an unconstitutional custom and practice of using excessive force, failing to obtain medical care, depriving persons of life, liberty, and property ... and conspiring to cover-up civil rights violations....'" *See also, Johnson v.*

*Brady*, 2015 WL 3774283, at *4 (D.Ariz. 2015) (conclusory allegations with no factual support insufficient to state *Monell* claim); *J.O. ex rel. Overstreet v. City of Phoenix*, 2013 WL 623601, at *3 (D.Ariz. 2013) (same).  Likewise, Plaintiff's conclusory allegations here – completely devoid of factual support – that Yavapai County had inadequate and arbitrary training programs, or do not investigate claims of excessive force and unreasonable search and seizure, or maintained some type of policy, practice or custom that was the moving force behind an alleged constitutional violation are exactly the types of conclusory, non-supported claims that are insufficient to state a "plausible" *Monell*-based claim under the above authorities.

       Plaintiff's 42 U.S.C. §1983 claims against Yavapai County must be dismissed because Plaintiff has failed, as a matter of law, to allege facts sufficient to state a plausible claim under *Monell.* The parties agree that to establish municipal liability, a plaintiff must meet the requirements of *Monell* to plead facts plausibly supporting 1) that the alleged unconstitutional act was committed pursuant to a formal governmental policy or longstanding practice or custom, or 2) that the alleged violation was committed or ratified by an official with final policy-making authority. *See, Monell v. Dep't. of Soc. Serv.,* 436 U.S. 658, 694 (1978). Plaintiff's allegations fail to state "facts" supporting a plausible *Monell* claim.

        Here, Plaintiff's Complaint does not allege "facts" supporting a plausible claim that Yavapai County has a formal governmental policy or longstanding practice or custom of making arrests without probable cause or engaging in actions to violate First Amendment expression.  The Complaint contains no allegation of a formal or explicit policy to that effect. Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).  However, allegations of random acts, or single instances of misconduct, are

insufficient to establish a municipal custom. *Navarro v. Block,* 72 F.3d 712, 714-15 (9th Cir. 1996). At best, that is all that Plaintiff alleges here. The Complaint's citation to a single instance where he, Plaintiff, was allegedly mistreated is insufficient to demonstrate an accepted municipal policy, custom or practice.

On a similar note, Ninth Circuit precedent reveals that Plaintiff's focus on his situation cannot support a §1983 claim that the municipality has failed to train its officers on law enforcement procedures. *See, Booke v. Cty. of Fresno*, 98 F.Supp.3d 1103, 1128 (E.D. Cal. 2015) ("[A] plaintiff generally must show other instances of peace officers violating constitutional rights in order to show deliberately indifferent training."). Indeed, Plaintiff offers no authority where a single incident of a "possible" deficiency in law enforcement practice renders a municipality in violation of the constitution for not launching a training program in response.

Based on the allegations of Plaintiff's Complaint, the lack of a plausible claim is put to rest by *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159-60 (9th Cir. 2014):

> "A 'pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,' though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.' (internal citations omitted). The isolated incidents of criminal wrongdoing by one deputy other than Deputy Doe 1 do not suffice to put the County or Baca on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.' (internal citations omitted). Neither Baca nor the County was faced with a pattern of similar constitutional violations by untrained employees." (internal citations omitted).

Likewise, Plaintiff's threadbare anecdotes do not state a plausible claim that Yavapai County was placed on notice of a need to train of constitutional dimension, and responded by failing to implement a training program.

Plaintiff next attempts to shore-up his *Monell*-based claim by suggesting a final policy-

maker committed, or ratified, a constitutional violation. Plaintiff's allegations, however, do not state a plausible claim on this theory. To qualify as a final policymaker, it is not enough that an individual has authority to make an operational decision, such as obtaining a warrant. As the Ninth Circuit has held:

> Municipal liability does not attach … unless the decisionmaker possesses final authority to establish policy with respect to the action ordered. The fact that a particular official – even a policy-making official – has discretion in the exercise of a particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

*Gillette v. City of Eugene,* 979 F.2d 1342, 1349 (9th Cir. 1992). Here, Deputies Contreras or Boehm, or Boelts or Johnson, are not alleged to be final policy-makers for general purposes, or for purposes relevant to the imposition of *Monell* liablity. Indeed, Plaintiff does not suggest that any person with final policy-making authority was involved in Plaintiff's situation, or ratified unconstitutional action related to Plaintiff. Plaintiff's Complaint does not even allege that a final policy-maker, such as the Yavapai County Sheriff, was even aware of the incident or follow-up investigation generally, or acted on the investigation generally.

Indeed, as to Plaintiff's reliance on the concept of "ratification," he cannot establish his *Monell* claim based on the ratification theory. It is not enough for Plaintiff to allege that a final policy-maker acquiesced to a subordinate's decision-making; instead, "[ratification] requires that an official policymaker make a deliberate choice from among various alternatives to follow a particular course of action." *Gillette,* 979 F.2d at 1348. In other words, to meet the requirement, Plaintiff must establish *both* that a policymaker approved a subordinate's decision and *the alleged unlawful basis for it. Id.; see also, Christie v. Iopa,* 176 F.3d 1231, 1239 (9th Cir. 1999) ("ratification requires, among other things, knowledge of the alleged constitutional violation"); *Spina v. Maricopa Cty. Dep't of Transportation,* 2010 WL 2671452, *6 (D. Ariz. 2010) ("there must be specific evidence that the final policymaker approved of the action and the basis for it. The evidence must specifically show that the

policymaker made a 'conscious, affirmative choice' to ratify the conduct in question."). Plaintiff has not remotely alleged facts stating a plausible claim that a final policy-maker took any approval action in relation to the underlying initial law enforcement contact, or any follow-up response to that contact.

Although Plaintiff appears to acknowledge that the Yavapai County Sheriff's Office is not a jural entity, *see,* Doc. 29, pg. 10, the fact that Plaintiff has failed to allege a plausible *Monell* claim must result in the dismissal of both Yavapai County and the Yavapai County Sheriff's Office, even if the latter were a jural entity.

### IV. PLAINTIFF'S STATE LAW CLAIMS FAIL BECAUSE THEY WERE NOT FILED WITHIN THE STATUTE OF LIMITATIONS PERIOD AND WERE NOT PRECEDED BY A PROPER OR TIMELY NOTICE OF CLAIM.

In deciding state law matters, "a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018). Plaintiff does not challenge that his Complaint was filed over one year from the date final criminal charges were dismissed, and that the Complaint fails to meet the A.R.S. § 12-821 statute of limitations period. *See,* Doc. 29, lls. 24-27. Instead, however, Plaintiff urges this Court to ignore Arizona's statutory limitations period as applied to government entities and officials as being "unfair." This Court is not at liberty to do so. *See, PSM Holding Corp., supra.* Plaintiff's failure to file a timely Complaint is fatal to his ability to maintain state law causes of action as this Court is obligated to follow the state statute, just as a state court would.

Moreover, Plaintiff's Response does not address Plaintiff's failure to provide a proper or timely notice of claim pursuant to A.R.S. §12-821.01. Plaintiff's Response also

fails to provide a cogent argument that punitive damages survive as to any state law claim in light of A.R.S. § 12-820.04.

Plaintiff's Response seems to unnecessarily duplicate arguments related to §1983 liability on pages 13-20. If this is Plaintiff's attempt to demonstrate the continued viability of state law claims, the arguments fall flat in light of Plaintiff's admitted failure to comply with the state law statute of limitations, or to comply with Arizona's mandatory notice of claim requirements related to the maintenance of state law causes of action.

## V.     CONCLUSION.

Defendants Boelts and Johnson are entitled to qualified immunity because Plaintiff has failed to show that either of them violated the U.S. Constitution under the well-pled fact allegations or violated clearly established constitutional law. Defendant Yavapai County is entitled to dismissal as no well-pled fact allegations support *Monell* liability under any recognized theory. Defendant Yavapai County Sheriff's Office is entitled to dismissal as it is not a jural entity and because no well-pled fact allegations support *Monell* liability. Defendants Yavapai County, Yavapai County Sheriff's Office, Boelts and Johnson are entitled to dismissal as to all state law causes of action due to Plaintiff's failure to file a timely complaint, failure to comply with Arizona's notice of claim statute, the Sheriff's Office status as a non-jural entity, and the inability to sustain state law claims against a County for the actions of Sheriff's personnel. Additionally, under state law, no punitive damages may be recovered against a public entity or public employee for state law claims, even if they were otherwise sustainable.

//

//

//

DATED this 18th day of November 2024.

JELLISON LAW OFFICES, PLLC

s/ *James M. Jellison*
James M. Jellison, Esq.
*Counsel for Defendants Yavapai County; Yavapai County Sheriff's Office; Boelts; and Johnson*

# CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024. I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing with service on the following registrants, or by mail if not a registrant:

Corey Drew
164 Rainbow Drive, #6423
Livingston, TX 77399
T: 480.630.3522
E: chembeforethestorm@gmail.com
 *Pro Se*

By: s/ *Rebecca L. Craft*