**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corey Drew,<br><br>                  Plaintiff,<br><br>v.<br><br>Yavapai, County of, et al.,<br><br>                  Defendants. | No. CV-24-08073-PCT-KML (MTM)<br><br><br>**ORDER** |

Plaintiff Corey Drew's interactions with Yavapai County police officers and prosecutors prompted him to file this suit alleging a variety of federal and state claims. The defendants who were served seek dismissal of all claims, non-party David Morgan seeks permission to file an amicus curiae brief, and a Report and Recommendation ("R&R") recommends dismissing four defendants who have not been served. None of the claims against the served defendants may proceed, the proposed amicus curiae brief would not be helpful, and the R&R is adopted.

**I.     Complaint**

In early December 2022, Drew was staying at Verde Valley Thousand Trails RV campground. On December 8, 2022, Stephen Bartle, a security guard at the campground, placed a 911 call to the Yavapai County Sheriff's Office ("YCSO") requesting a civil escort from the sheriff. (Doc. 1 at 9.) Bartle explained Scott Wooley (the park manager) wanted officers to accompany him when he spoke with Drew about an incident the day before that involved Drew and other campground staff. Bartle did not report any crimes to the 911

operator, that Drew had been violent or had any weapons, or that Drew had made threats toward any campground staff.[1] (Doc. 1 at 9.)

YCSO dispatched six officers to the campground. Defendant Deputy Samuel Contreras was the lead deputy and first to arrive. Contreras did not contact Bartle or Wooley when he arrived but decided to contact Drew first. Contreras waited at Drew's campsite for several minutes and then received radio traffic that Drew was near the front office, where Contreras immediately went. Approaching the office, Contreras encountered Drew in his truck. Defendant Deputy Patrick Boehm arrived at Drew's truck just after Contreras and parked next to Contreras, blocking in Drew's truck. (Doc. 1 at 10.) Contreras and Boehm approached the truck and Contreras asked Drew to step out of it. Drew did not comply immediately, but eventually did so and was "detained." (Doc. 1 at 13.)

While Drew was detained, Boehm and Contreras investigated by speaking to campground management. The officers were told Drew had a contract to use the park and was not trespassing. Drew was released and both Boehm and Contreras apologized "for wrongfully placing him under arrest for disorderly conduct." (Doc. 1 at 13.)

The day after that incident, Drew filed a complaint with defendant YCSO Lt. John Johnson. (Doc. 1 at 13.)  That same day, Drew uploaded a video of the incident to YouTube. On December 20, 2022, Johnson responded to Drew's complaint stating he had reviewed the video footage, some things "should have been done differently," and he "would conduct training with the officers as a consequence." (Doc. 1 at 14.) Drew asked what training would be reviewed and with which officers, and Johnson responded it would be "the first two deputies with whom you spoke." Drew then emailed back "If I understand correctly, your officers violated my right to be secure in my property, escalated the situation,

---

[1] These allegations contradict what Drew alleged in a separate lawsuit he filed against the campground and staff in which he alleged, under penalty of perjury, that when Bartle called 911, Bartle said Drew was "threatening," "aggressive," "highly agitated," and refusing to answer questions. Drew also alleged Bartle asked if deputies were on the way and whether there would be "back up." (*See Drew v. Equity Lifestyle Properties*, No. CV-24-08050-PCT-KML (MTM) (D. Ariz.), Doc. 1 at 12-13.)

committed disorderly conduct and assault, but are not facing any discipline and will only be reviewing training?" Johnson did not reply to this email. (Doc. 1 at 14.)

On December 27, 2022, Drew emailed Johnson stating he would "like to escalate this complaint if you are not going to respond to my question. What is the next step Internal affairs, or? May I please have this information?" (Doc. 1 at 15.) Johnson did not reply to Drew's email or escalate Drew's complaint. Instead, Johnson emailed defendant Captain Tom Boelts about Drew. In that email, Johnson stated he had reviewed the body-worn camera footage and Drew's complaint was unfounded.

Around this time, Johnson decided to "re-investigate" the December 7 and December 8 incidents, even though he had no new facts or evidence. (Doc. 1 at 16.) Drew believes Johnson's decision to re-investigate the incidents was in retaliation for Drew "exercising his First Amendment Rights." (Doc. 1 at 16.) Drew's First Amendment activity appears to be the complaint he sent to Johnson and posting the video online.

On December 29, 2022, Johnson ordered defendant Officer Larry Hooten—who was not part of the original incident—to re-interview some of the campground employees. (Doc. 1 at 16.) Hooten watched the body cam video of the incident and interviewed four campground employees, but he did not interview Drew. (Doc. 1 at 16-17.) During his interviews of campground employees, Hooten used leading language the employees had not previously used. (Doc. 1 at 18.) The leading questions were meant to support the charges Johnson and Hooten "had already decided to file" against Drew. (Doc. 1at 18.)

Defendant Dennis M. McGrane, the Yavapai County Attorney, assisted YCSO with the investigation, identified potential charges, and reviewed the private contract between Drew and the campground. (Doc. 1 at 17.) McGrane's actions allegedly were taken against Drew in retaliation for Drew resisting the unlawful arrest by YCSO on December 8, 2022. (Doc. 1 at 17.)

On February 14, 2023, Hooten submitted seven criminal charges regarding Drew. As a result, a warrant was issued and on February 16, 2023, Drew was arrested. The same day Drew was arrested, Johnson emailed 31 people identifying Drew as an "unpleasant

sovereign citizen." (Doc. 1 at 19.) Three of the seven criminal charges were dismissed by a state court judge for lack of probable cause. On March 1, 2023, "the remaining four (4) charges were dismissed for violation of . . . Arizona's anti-Slapp law." (Doc. 1 at 21.)

On April 19, 2024, Drew filed his complaint that includes a mixture of federal and state law claims against Yavapai County, YCSO (also identified as Sheriff David Rhodes in his official capacity), Dennis M. McGrane, Boelts, Johnson, Contreras, Boehm, and Hooten. Drew served Yavapai County, YCSO, Boelts, and Johnson but did not serve McGrane, Contreras, Boehm, or Hooten. The served defendants filed a motion to dismiss and a magistrate judge issued a R&R recommending dismissal of the unserved defendants based on Drew's failure to serve them for nearly ten months.

**II.     Unserved Defendants**

The R&R recommends the court dismiss McGrane, Contreras, Boehm, and Hooten based on Drew's failure to complete service of process. (Doc. 34.) Drew filed objections arguing these defendants were properly served but, if not, he requests another extension of time in which to complete service or alternatively some other form of assistance in completing service of process. (Doc. 35.) Drew also filed six overlapping motions regarding service and resolution of the R&R. For the following reasons, the R&R is adopted.

After filing this case on April 19, 2024, Drew obtained summonses less than one week later. (Doc. 7.) The case was referred to a magistrate judge for pretrial proceedings and on May 1, 2024, the magistrate judge issued an order reminding Drew he needed to serve each defendant. The magistrate judge warned failure to serve a defendant may result in the dismissal of that defendant. (Doc. 10.) Drew did not file proofs of service after that order so on July 26, 2024, the magistrate judge ordered Drew to show cause why the case should not be dismissed. (Doc. 12.)

In response to the magistrate judge's July 26, 2024, order, Drew filed a document stating that on May 27, 2024, he had served all defendants "via certified return receipt USPS mail." (Doc. 13.) Drew also stated that on July 17, 2024, he had completed personal

service on Johnson and Boelts by "delivering the documents to their agent," a nonparty. (Doc. 13 at 5.) On August 5, 2025, Johnson and Boelts filed a motion seeking an extension of time to respond to the complaint. In that motion Johnson and Boelts conceded they had been served. (Doc. 15 at 2.) But the motion also stated Drew had been asked if he would consent to the extension of time and had responded he would do so only if defense counsel would accept service on behalf of all defendants. Drew's request establishes he knew as of August 5, 2025, that service had not been completed on all defendants.

On September 20, 2024, Johnson and Boelts filed their motion to dismiss. (Doc. 20.) That motion stated on its first page that "McGrane, Contreras, Boehm, and Hooten have not been timely or properly served." (Doc. 20 at 1 n.1.) On September 30, 2024, the magistrate judge issued an order requiring Drew explain why those four defendants should not be dismissed for failure to serve. (Doc. 22.) Drew filed a response that again argued he had served the four defendants via certified mail. (Doc. 23 at 2.) Drew also claimed it was difficult to complete personal service, but he believed the unserved defendants had actual notice of this suit. Drew asked the court to find the service he had conducted was sufficient, provide 60 additional days to complete service, or order service be completed by the United States Marshals Service. (Doc. 23 at 5.)

On October 16, 2024, the magistrate judge granted Drew an additional fourteen days to complete service on the unserved defendants. (Doc. 24.) Doing so meant Drew was again on notice that his prior service attempts were inadequate. Drew then filed proofs of service stating Contreras, Boehm, and Hooten had been served by delivering documents to an unidentified individual at the Sheriff's Office while McGrane had been served by delivering documents to "Donna" at the County Attorney's Office. (Doc. 25-1 at 2.) A Deputy County Attorney who is not a defendant in this suit later filed an affidavit stating those service attempts were improper because neither the unidentified individual at the Sheriff's Office nor "Donna" was authorized to accept service on behalf of the unserved defendants. (Doc. 28-1 at 2.)

On February 3, 2025, the magistrate judge issued an R&R recommending McGrane,

1    Contreras, Boehm, and Hooten be dismissed for failure to serve. Drew filed objections
2    claiming he had served all defendants "in the same manner" at the YCSO and there "was
3    no indication . . . that a different standard would later be applied to McGrane, Contreras,
4    Boehm, and Hooten." (Doc. 35 at 5.) Drew also filed a series of repetitive motions: a
5    motion for extension of time to complete service (Doc. 36), a motion to expedite a ruling
6    on that motion (Doc. 37), a motion to order the Marshals Service complete service (Doc.
7    39), a motion to compel the unserved defendants provide their home addresses (Doc. 40),
8    and a motion for hearing on the motion to compel (Doc. 41). These motions were filed in
9    February 2025 and there is no evidence Drew has made any additional efforts to complete
10   service of process since that time.

11          Drew's objections to the R&R can be categorized into three groups: 1) the service
12   he completed was proper; 2) Drew had no reason to believe the service he completed was
13   insufficient; and 3) the unserved defendants have "actual notice" of this suit such that
14   formal service is unnecessary. These objections are not meritorious.

15          **A. Service was Improper**

16          Drew first argues the unserved defendants were properly served. (Doc. 35 at 2.) He
17   appears to be referencing his attempts to serve them via certified mail or by personally
18   delivering documents to individuals at the unserved defendants' places of work. Neither
19   federal nor Arizona law permits service by certified mail without first obtaining a court
20   order. *See Marks v. Holm*, No. 1 CA-CV 21-0299, 2022 WL 320562, at *3 (Ariz. Ct. App.
21   Feb. 3, 2022) ("Service by certified mail . . . would only be authorized by court order, and
22   the record reflects no such authorization."). And Drew has provided no evidence the
23   individuals who were personally served at the two workplaces were authorized to accept
24   service of process. In fact, the only evidence is that they were not authorized. (Doc. 28-1
25   at 2.) Serving an unauthorized individual without significant evidence that the unserved
26   defendants have actual notice of this suit is not sufficient. *Cf. Direct Mail Specialists, Inc.*
27   *v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988) (serving receptionist
28   of small company was sufficient because there was "uncontroverted" evidence of actual

notice). Drew has not properly served McGrane, Contreras, Boehm, or Hooten.

### B. Drew was On Notice that Service was Improper

Drew argues that prior to issuance of the R&R, he had "no reason to believe further service attempts were necessary." (Doc. 35 at 2.) That is incorrect. In approximately August 2024, Drew refused to stipulate to an extension of time unless defense counsel would accept service on behalf of the unserved defendants. Drew would not have made such a request if he believed his earlier service attempts were valid. Also, in September 2024 the magistrate judge issued an order regarding the unserved defendants and granted Drew an extension to complete service. Those actions establish Drew knew his prior efforts were insufficient. The indisputable record is that Drew knew his service efforts were insufficient long before the R&R was issued.

### C. Actual Notice is Insufficient

Drew's final objection is the unserved defendants have actual notice of this suit so requiring additional service is a needless formality. The only supporting evidence Drew provides is a letter from the lawyer defending the served defendants stating that lawyer had "been retained to represent the Yavapai County Defendants." (Doc. 20-2 at 2.) That does not definitively establish the unserved defendants have notice of this suit. More importantly, actual notice would not mean service is no longer necessary. Actual notice "is not a substitute for service of process under Federal Rule of Civil Procedure 4." *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 768 (9th Cir. 2024). Even if the unserved defendants have actual notice, Drew was still required to complete proper service.

### D. Discretionary Decision

Drew's objections do not have merit, but the court must still make a discretionary decision whether to grant another extension of time or grant some other form of relief that might lead to the unserved defendants being served.

Drew filed this suit without the assistance of counsel and paid the filing fee. Pro se litigants such as Drew "must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v.*

1  *Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). It would be improper for the court to
2  "become an advocate for or . . . assist and guide the pro se layman through the trial thicket."
3  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) (simplified). Drew is entitled to the
4  same treatment as all other fee-paying litigants regarding service of process.

5  After filing his suit on April 19, 2024, Drew received three explicit warnings from
6  the magistrate judge that any unserved defendant would be dismissed. Despite those
7  warnings, Drew now claims he had "no reason to believe" he needed to take additional
8  action (Doc. 35 at 2) until the R&R "was filed on February 3, 2025" (Doc. 37 at 3). Drew's
9  patently false statement weighs against granting him yet another extension of time. Drew
10 made very limited efforts to complete service during the nine months between when the
11 complaint was filed and the R&R issued, despite the magistrate judge's repeated attempts
12 to spur him into action. To the extent Drew was experiencing difficulties, he was free to
13 seek court assistance through a formal motion. But Drew did not do so. And even after the
14 R&R issued, Drew has not made any additional efforts to complete service of process.

15 "[T]he service requirements of Rule 4" are "flexible" and "should be liberally
16 construed so long as a party receives sufficient notice of the complaint." *S.E.C. v. Ross*,
17 504 F.3d 1130, 1140 (9th Cir. 2007) (simplified). But three warnings over the course of
18 almost a year, coupled with a false statement in support of yet another extension, establish
19 dismissal for failure to serve is appropriate in this case. Defendants McGrane, Contreras,
20 Boehm, and Hooten are dismissed without prejudice.

21 **III.   Non-Party David Morgan's Motion for Leave to File Amicus Curiae Brief**

22 On November 15, 2024, non-party David Morgan filed a Motion for Leave to File
23 Brief of Amicus Curiae in opposition to the motion to dismiss. (Doc. 31.) Morgan asserts
24 he is an investigative journalist and publisher of *The Cochise County Record*, a news
25 service in Cochise County, Arizona, focused on local government, police, and the courts.
26 (Doc. 31 at 1.) Morgan states he "seeks to ensure that government officials who retaliate
27 to chill critical speech are held accountable, and that the legal standards protecting the
28 exercise of First Amendment rights are fully defended." (Doc. 31 at 2.) In his lodged brief,

Morgan argues Johnson and Boelts are not entitled to qualified immunity with respect to Drew's First Amendment retaliation claim. (Doc. 31-1 at 2-12.) Yavapai County, YCSO, Boelts, and Johnson oppose Morgan's motion. (Doc. 31-1 at 2.)

"The Court has broad discretion to grant or refuse a prospective amicus participation." *Washington v. United States Food & Drug Admin.*, 668 F. Supp. 3d 1125, 1144 (E.D. Wash. 2023). In exercising that discretion, the court looks to "whether the briefing supplement[s] the efforts of counsel, and draw[s] the court's attention to law that escaped consideration." *Id.* (simplified). The court may also consider whether the prospective participant "has an interest in some other case that may be affected by the decision in the present case." *Id.*

In this case, Morgan's proposed brief does not draw the court's attention to law that has escaped the court's consideration nor has Morgan shown he has an interest in some other case that may be affected by the court's decision on Drew's First Amendment claim. Accordingly, Morgan's motion is denied.

**IV.     Motion to Dismiss Standard**

Defendants Yavapai County, YCSO, Boelts, and Johnson (collectively "defendants") purport to be seeking dismissal based on a lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. Their motion does not make any jurisdiction-based arguments so only the standard for failure to state a claim is relevant.

Dismissal of a complaint (or any claim within it) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). The allegations in the complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678.

## V. Discussion

Drew's complaint lists fourteen claims brought against different groups of defendants. The fourteen claims can be categorized as:

- Count One: First Amendment retaliation;
- Counts Two to Five: municipal liability for constitutional violations;
- Counts Six, Nine, Ten, and Eleven: violations of the Fourth and Fourteenth Amendments;
- Count Seven: respondeat superior against supervisors for constitutional violations by subordinates;
- Count Eight: judicial deception in violation of Fourth Amendment; and
- Count Twelve to Fourteen: state law tort claims.

The only defendant named in Count Eight is Hooten, who has been dismissed based on Drew's failure to serve. (Doc. 1 at 31-33.) Count Eight therefore is not discussed further. In addition, Drew has named YCSO as a defendant, but it is a "non-jural entity under Arizona state law." *Melendres v. Arpaio*, No. 13-16285, 2015 WL 1654550 (9th Cir. Apr. 15, 2015) (citing to *Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010)). A sheriff's office is simply an administrative creation of the county sheriff to allow him to carry out his statutory duties and not a "person" amenable to suit pursuant to § 1983. YCSO is therefore dismissed and not discussed further.

### A. Count One: First Amendment Retaliation

Count One alleges that in response to Drew's exercise of his First Amendment rights, Johnson and Boelts were among those who caused "the retaliatory filing of charges, dissemination of derogatory and false information, and engagement in conduct intended to chill [Drew's] exercise of his First Amendment rights." (Doc. 1 at 21.)

To state a claim under § 1983 for First Amendment Retaliation, a plaintiff must allege: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from

continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citations omitted). When the adverse actions consist of a "retaliatory arrest" or a "retaliatory prosecution," a plaintiff must also plead and prove the absence of probable cause for the arrest or bringing of criminal charges. *Hartman v. Moore*, 547 U.S. 250, 252 (2006); *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019).

Drew's complaint to YCSO and posting a video of his arrest to YouTube satisfy the first element requiring he engage in constitutionally protected activity. But it is difficult to determine the exact adverse actions that Drew believes should be deemed sufficient to satisfy the second element. And most importantly, Drew has not alleged a sufficient causal relationship because he has not alleged an absence of probable cause.

In terms of adverse actions, Drew seems to focus on Johnson's decision to "re-investigate" the incidents that occurred on December 7 and December 8 and his decision to file charges against Drew. (Doc. 1 at 16-17.) As for Boelts, Drew identifies the adverse actions as Boelts sending emails asking if there was a photograph of Drew, telling other officers "to check out [Drew's] YouTube channel," requesting "a threat assessment on [Drew]," and referring to Drew as an "unpleasant sovereign citizen." (Doc. 1 at 18-19.) Of these actions, Johnson's decisions to pursue an investigation and file charges likely qualify as adverse actions and will be treated as such. But the actions by Boelts fall short. A statement that others should look at Drew's YouTube channel, a request for a threat assessment, and referring to Drew as a sovereign citizen are not actions that would chill a person of ordinary firmness from engaging in future protected activity. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("some adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries"). Drew therefore has not stated a plausible retaliation claim against Boelts.

Although Drew's allegations may be sufficient to establish Johnson's actions qualify as adverse actions, Drew has not adequately alleged Johnson's actions were taken in the absence of probable cause. According to the complaint, Hooten provided "leading

1 questions" to the alleged victims that led to statements supporting Drew's arrest and
2 prosecution. Drew has not alleged that the statements from the victims did not actually
3 establish probable cause. Drew does allege some of the charges eventually were dismissed
4 for lack of probable cause, but he admits some of the charges were dismissed on a different
5 basis. (Doc. 1 at 21.) Without allegations establishing Johnson's actions were taken in the
6 absence of probable cause, Drew has not stated a plausible First Amendment retaliatory
7 arrest or retaliatory prosecution claim.[2]

### B. Counts Two to Five: *Monell* Claims

Drew's claims in Counts Two to Five are denoted as "Policy/Practice/Custom" (Count Two), Failure to Train (Count Three), "Act of Final Policy Maker" (Count Four), and "Ratification by Final Policy Maker" (Count Five). These all represent Drew's attempt to plead a claim against Yavapai County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Defendants argue Drew fails to allege non-conclusory facts supporting such a claim. (Doc. 20 at 5.)

To state a *Monell* claim, Drew must allege (1) he "had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). A governmental policy is "a deliberate choice to follow a course of action . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Drew can satisfy *Monell*'s policy requirement in one of three ways. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (per curiam). First, a local

---

[2] Drew also has not alleged sufficient facts to take advantage of the "*Nieves* exception" that allows a retaliatory arrest claim to proceed when the "officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (simplified). To invoke this exception, Drew needed to allege facts constituting "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id. See also Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (reiterating the need for "objective" evidence that officers typically would not arrest individuals despite having probable cause).

1  government may be held liable when it acts "pursuant to an expressly adopted official
2  policy[.]" *Id.* (citing *Monell*, 436 U.S. at 694). Second, a public entity may be held liable
3  for a "longstanding practice or custom." *Id.* (citing *Monell*, 436 U.S. at 694). Third, a local
4  government may be held liable when "the individual who committed the constitutional tort
5  was an official with final policy-making authority or such an official ratified a
6  subordinate's unconstitutional decision or action and the basis for it." *Gordon*, 6 F.4th at
7  974 (quotation marks and citation omitted). Drew's complaint appears to break out the last
8  two theories into four separate counts. (*See* Doc. 1 at 22–28.)

9  Defendants argue Drew's allegations supporting his *Monell* claims are "entirely
10 conclusory." (Doc. 20 at 7.) Drew responds by claiming he has sufficiently alleged Yavapai
11 County has a policy, practice, or custom of disregarding citizens' rights, failing to properly
12 address complaints, and retaliating against individuals who assert their rights. Drew
13 believes his allegations support an inference there is an unofficial policy, practice, or
14 custom that resulted in the violation of his rights. (Doc. 29 at 8.)

15 Drew fails to state a claim based on an unconstitutional policy, practice, or custom.
16 The only specific allegations are those involving himself when he was arrested and the
17 alleged subsequent retaliation after he posted the video of his arrest to YouTube. Drew has
18 not provided any allegations of similar incidents of arrests and retaliation for exercising
19 First Amendment rights to allow the conclusion that "the conduct has become a traditional
20 method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Drew
21 suggests the court may infer a policy, practice, or custom based on the conduct allegedly
22 directed towards only him, but that is the type of pleading the courts have rejected since
23 *Iqbal*. *See Gordon*, 6 F.4th at 974.

24 Drew also seeks to impose *Monell* liability based on a failure to train/supervise
25 theory. To state such a claim, Drew must allege that the municipality exhibited "'deliberate
26 indifference to the rights of persons' with whom [its] employees are likely to come into
27 contact." *Lee*, 250 F.3d at 681 (citation omitted). "'[D]eliberate indifference' is a stringent
28 standard of fault, requiring proof that a municipal actor disregarded a known or obvious

1  consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S.
2  397, 410 (1997). It may be shown if "the need for more or different training is so obvious,
3  and the inadequacy so likely to result in the violation of constitutional rights, that the
4  policymakers of the city can reasonably be said to have been deliberately indifferent to the
5  need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). "A pattern of similar
6  constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate
7  deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51,
8  62 (2011) (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 409). "Without notice that a course
9  of training is deficient in a particular respect, decisionmakers can hardly be said to have
10 deliberately chosen a training program that will cause violations of constitutional rights."
11 *Id.* at 62. "A municipality's culpability for a deprivation of rights is at its most tenuous
12 where a claim turns on a failure to train." *Id.* at 61.

13    Drew has failed to allege any "pattern of similar constitutional violations by
14 untrained employees" as ordinarily required to support a failure-to-train claim against
15 Yavapai County. *See Connick*, 563 U.S. at 62. Again, Drew's only specific allegations are
16 those involving his own treatment. Drew's argument that the course of action against him
17 suggests deliberate indifference on the part of the County in its training program fails to
18 meet the stringent standard of fault necessary to put the County on notice that it had
19 deliberately chosen a training program that would cause violations of constitutional rights.

20    Finally, Drew alleges Sheriff Rhodes, the final policymaker for YCSO, failed to
21 properly investigate and discipline officers involved in the incident and explicitly or
22 implicitly endorsed their conduct such that *Monell* liability might attach. Drew alleges the
23 highest-ranking officials or final policymakers for YCSO failed to establish "a transparent
24 and accountable complaint process," failed to implement an adequate system for tracking,
25 recording, and resolving public complaints, and thus effectively denied Drew and similarly
26 situated individuals their right to procedural due process. (Doc. 1 at 27.)

27    The Ninth Circuit has "found municipal liability on the basis of ratification when
28 the officials involved adopted and expressly approved of the acts of others who caused the

constitutional violation." *Trevino*, 99 F.3d at 920. But ratification "generally requires more than acquiescence." *Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *overruled on other grounds*, 575 U.S. 600, 1767–1778 (2015)). The complaint does not include any non-conclusory allegations regarding any approval or ratification by the Sheriff or other high-ranking officials of the allegedly unconstitutional actions. Moreover, it is well-established that the "mere failure to discipline [officers] does not amount to ratification of their allegedly unconstitutional actions." *Sheehan*, 743 F.3d at 1231. Drew has not stated any plausible *Monell* claim.

**C. Counts Six, Nine, Ten, and Eleven: False Arrest, Malicious Prosecution, and Fabrication of Evidence**

Counts Six, Nine, Ten, and Eleven appear to overlap and include allegations regarding violations of Drew's constitutional rights based on false arrest, fabrication of evidence, and malicious prosecution. The claims are not plausible.

**i)     False Arrest**

To state a § 1983 claim for false arrest, a plaintiff must allege there was no probable cause for his arrest. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citing *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)). In a false arrest case, "[p]robable cause arises when an officer has knowledge based on reasonably trustworthy information that the person arrested has committed a criminal offense." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).

Drew alleges in the complaint that Boehm and Contreras—whom he never served—were involved in his initial arrest on December 8, 2022, not Johnson and Boelts. Drew does not say who arrested him pursuant to a warrant on February 16, 2023. Drew does not allege in the complaint or argue in his response that either Johnson or Boelts was present at the time of either arrest.

"An officer's liability under section 1983 is predicated on his integral participation in the alleged violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 ("integral participation . . . require[s] some fundamental involvement in the conduct that allegedly

caused the violation."). Here, Drew has not alleged facts supporting that either Johnson or Boelts was an integral participant in either of his arrests. Accordingly, Drew has failed to state a Fourth Amendment unlawful arrest claim against either Johnson or Boelts, and Counts Six and Nine (to the extent Count Six is construed to include a Fourth Amendment unlawful arrest claim) are dismissed.

### ii) Malicious Prosecution and Fabrication of Evidence

To prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citations omitted). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Id*. at 1066-67 (citation omitted).

Drew does not adequately allege either Johnson or Boelts prosecuted him themselves, fabricated evidence, or caused the alleged victims to give false answers that led to charges being wrongfully filed against Drew. Drew's allegations that Johnson fabricated or manipulated evidence, without saying what was fabricated or manipulated, is simply too vague and conclusory to state a claim.[3] Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, even a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded. *Id*. As such, Drew fails to state a malicious prosecution claim against Johnson and Boelts in Count Six and against Johnson in Counts Ten and Eleven, and those claims are dismissed.

---

[3] In fact, in another case Drew alleged in a verified complaint it was campground employees who made false statements about him to a YCSO officer, and those false statements led to the charges against Drew and his arrest on a warrant on February 16, 2023. (*See* Doc. 1 at 15-18 in No. CV-24-08050.)

**D. Count Seven: Supervisory Liability**

Count Seven alleges Johnson and Boelts possessed direct supervisory relationships over the individuals whose actions resulted in a violation of Drew's rights, failed to properly train, supervise, or control their subordinates, and exhibited deliberate indifference to, or tacit authorization, of unconstitutional practices, policies, or actions undertaken by their subordinates. (Doc. 1 at 30-31.) It appears Drew's underlying theory for this count is that Johnson and Boelts should be held liable for wrongs committed by their subordinates. But § 1983 does not allow for this type of liability and Count Seven is dismissed.[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

**E. Counts Twelve through Fourteen: State Law Claims**

Defendants argue Drew's state law claims in Counts Twelve through Fourteen must be dismissed for numerous reasons, one of which is Drew's alleged failure to comply with Arizona's Notice of Claim statute. That statute requires an injured party provide a notice of claim "within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). Compliance with the Notice of Claim statute "is a mandatory and essential prerequisite" to an action against a public entity or employee. *Salerno v. Espinoza*, 115 P.3d 626, 628 (Ariz. Ct. App. 2005). When a person wishes to pursue claims against a public entity and a public employee, he must give notice of the claim to both the employee individually and his employer. *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007).

Defendants argue Drew mailed a Notice of Claim to the Clerk of the Board of Supervisors dated well over 180 days from the last event pleaded in the complaint. They

---

[4] Alternatively, Drew may be attempting to allege a slightly different theory that allows for a supervisor to be liable in his individual capacity "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (simplified). But if this was Drew's intent, he has not provided any specific, non-conclusory allegations regarding the actions of Johnson or Boelts that led to a violation of his constitutional rights, or their knowledge and acquiescence in any underlying constitutional violation.

further argue the mailing was not directed at or shown to be delivered to any named individual defendants. Drew does not disagree with these arguments but argues the Notice of Claim requirement is unfair. The court cannot ignore the Arizona legislature's requirements for claims against government entities and government employees. Drew does not allege or present any evidence or argument that he timely served the individual defendants named in his state law claims. Because Drew did not comply with the Notice of Claim statute, Counts Twelve, Thirteen, and Fourteen are dismissed.

### F. Leave to Amend

The current complaint does not state any plausible claims for relief but it is possible Drew would be able to amend his complaint to state a First Amendment retaliation claim against Johnson or Boelts. To state a claim against Boelts, Drew must provide additional allegations identifying legally cognizable adverse actions taken by Boelts. And for both Johnson and Boelts, Drew must provide additional allegations indicating their actions were taken in the absence of probable cause. The remainder of Drew's claims could not be cured by amendment, so leave to amend those claims is not appropriate.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 20), Motion for Leave to File Brief of Amicus Curiae David Morgan (Doc. 31), and other related motions (Doc. 36, 37, 38, 39, 40, 41).

(2) The Motion for Leave to File Brief of Amicus Curiae David Morgan (Doc. 31) is **DENIED**.

(3) Defendants' Motion to Dismiss (Doc. 20) is **GRANTED with limited leave to amend**. No later than **June 20, 2025**, plaintiff shall file an amended complaint limited to his First Amendment retaliation claim against defendants Johnson and Boelts. The Clerk of Court shall enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

(4) The Report and Recommendation (Doc. 34) is **ADOPTED**. Defendants McGrane, Contreras, Boehm, and Hooten are **DISMISSED WITHOUT PREJUDICE**.

(5) The Motion for Extension (Doc. 36), Motion to Expedite (Doc. 37), Motion for Court Order (Doc. 38), Motion for Expedited Hearing (Doc. 39), Motion to Compel (Doc. 40), and Motion for Hearing (Doc. 41) are **DENIED**.

Dated this 4th day of June, 2025.

*[signature]*

Honorable Krissa M. Lanham
United States District Judge